IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DANIEL VALDEZ, DARRELL C. HOWIESON,
CHAD KLUG, THOMAS J. LOHR,
CHRIS E. LUNDVALL, DANIEL MILLER,
ZANE WARD, and BENJAMIN ZERBY, on behalf**
of themselves and all others similarly situated,

        Plaintiffs,

v.                              Case No.  17-CV-535 JB-CG

**BOARD OF COUNTY COMMISSIONERS
OF SANDOVAL COUNTY,**

        **Defendant.**

### UNOPPOSED MOTION TO APPROVE SETTLEMENT AND STIPULATED JUDGMENT

COME NOW the Plaintiffs, by and through undersigned counsel, and hereby move the Court, pursuant to 29 USC §216 to approve a settlement, and to enter a stipulated judgment as set forth in Exhibit A to this motion.  As grounds for such motion, the plaintiffs state as follows:

### I. Background of the Claims and Defenses in the Litigation

This is a collective action brought by Plaintiffs on behalf of themselves and other similarly-situated employees who are or were employed by Defendant during the pay period of May 2014 through the present.  Plaintiffs allege in their Complaint [Doc. 1] that Defendant underpaid Plaintiffs their agreed upon hourly rate in violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §216(b)).  Plaintiffs work, or worked, for Defendant as Detention Transport Officers at the Sandoval County Detention Center.  Plaintiffs contend that Defendant, in violation of the Fair Labor Standards Act (29 U.S.C. §201 *et seq.*), willfully failed to compensate Plaintiffs for all the hours they spent working for the County.  Specifically, and as

detailed below, Plaintiffs allege that they were not compensated for on-call duties or at time-and-a-half for duties performed after being called back to work (call-back pay).

On August 22, 2018, parties entered into a settlement agreement to compromise the claims of both the named plaintiffs as well as the potential plaintiffs who are entitled to notice under 216(b) of the FLSA.  The Defendant has agreed to pay $40,000 to include back wages for 8 plaintiffs and 2 potential plaintiffs.  Settlement distribution shall be as follows:

| | |
|---|---|
| 10 Plaintiffs | $27,100 (average recovery $2,700) |
|     Named Plaintiffs | $3,200 each |
|     2 Potential Plaintiffs | $750 each |
| Costs: | $1,500 |
| Attorney Fee: | $10,567.79 (average hourly rate $125) |
| Gross Receipts Tax: | $832.21 (at 7.875%) |
| **Total:** | **$40,000** |

Of the payments to Plaintiffs and potential class members, all will be paid as wages, with standard withholding accounted for.

In addition to the named Plaintiffs, the two potential plaintiffs – neither of whom endeavored to join the lawsuit and were not represented by counsel, because no class certification was pursued in the case – have agreed to the distribution of proceeds.  The named Plaintiffs, who stepped forward to prosecute the case, some of whom sat for depositions, agreed to an equal distribution of the proceeds among themselves.  And the two non-Plaintiffs, both of whom no longer work for the County as Transport Officers, agreed to a lesser amount, taking into consideration their lack of participation in the lawsuit.  *See* Exhibits B and C, attached hereto.  All have agreed to the amounts and will sign the appropriate releases required of them by the County.

Parties believe that the settlement is fair and equitable.  The unpaid time at issue in this litigation relates to employees' activities performed pursuant to the County's policies for on-call

and call-back time. As discussed more thoroughly below, the settlement recognizes significant questions relating to the stances taken by both parties.

## II.  Need for Judicial Approval

The case currently involves eight plaintiffs and two other Transport Officers who would have had a right to notice as potential members of a collective action. No collective action was petitioned for or approved by this Court. Because the claims being settled involve statutory rights to overtime wages, existing authority suggests that finality via a settlement and release requires at least a minimum level of court supervision. In addition, the settlement was reached on behalf of a group of plaintiffs consisting of those who have already joined and those who have not yet received notice of the pending litigation. In these circumstances, the Court should evaluate the fairness of the settlement in light of the issues in the litigation.

It has been repeatedly held "that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such a waiver or release contravenes the statutory policy." *See, e.g.*, *Brooklyn Savings v. O'Neil*, 324 U.S. 695, 704 (1945) (citations omitted). In *Brooklyn Savings*, the Supreme Court expounded at length on the issue in the context of wage claims under the Fair Labor Standards Act ("FLSA"), and ultimately concluded that rights to back wages, including overtime compensation, and liquidated damages under the FLSA may not be waived or released absent judicial supervision.

Looking at the legislative history of the FLSA, the Court found an "intent on the part of Congress to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Id.* at 705. The Court went on to observe that "[n]o one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act." *Id.*; *see*

*also Gormin v. Brown-Forman Corp.*, 744 F. Supp. 1100, 1101, 1104 (M.D. Fla. 1990) (citing *Brooklyn Savings*, among other cases, for the "long established rule that claims for back wages may not be waived by an unsupervised release"). From this, the Court concluded that "the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's" right to liquidated damages. *Id.*

The *Brooklyn Savings* court did not expound in detail on the nature of judicial supervision required, but the lower courts have filled in the gaps. Where a genuine dispute arises about the extent of unpaid work and/or the appropriate extent of liquidated damages to be paid, the Court should scrutinize the proposed settlement to determine if it is "fair and equitable" to the parties. *Jarrard v. Southeastern Shipbuilding,* 163 F.2d 960, 961 (5th Cir. 1947); *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982).

This case is not a class action subject to FRCP 23, and none of the named plaintiffs is an unwilling class member. Notice is not necessary because the two other eligible potential members of a collective action are aware of the lawsuit and the settlement discussions. One potential member of a collective action still works for the County in a different capacity, and the other worked for the County up until just days before the mediation before Judge Garza.

All of the named Plaintiffs participated in the settlement conference which resulted in agreement, either in person or by phone. Those participants unanimously agreed to the terms of the settlement. Although all other Plaintiffs are bound by the decisions so reached, it is nonetheless appropriate for the Court to also protect the absent Plaintiffs by satisfying itself that the settlement is fair and equitable.

### III.  The Proposed Settlement is Fair and Equitable

Following written discovery, as well as numerous witness interviews, the Plaintiffs reached certain conclusions about their case.  Following a similar process, Defendant reached entirely different conclusions.  In short, the issues in the case were much in dispute as the parties approached settlement.  This dispute and resulting compromise renders the settlement reasonable.  The settlement is proposed to work as follows:

This settlement is fair and represents a reasonable compromise of the claims and defenses.  Plaintiffs, working with their counsel, estimated that Plaintiffs and potential plaintiffs were owed about $27,273.50 in overtime pay for callback time worked between May 2014 and May 2017.  Plaintiffs arrived at this estimate based upon review of documents produced by opposing counsel as well as through witness interviews.  The amount of overtime pay for callback time was pro-rated to account for the fact that some overtime logs were not available, although payroll reports and time cards were produced during the relevant time period.  The use of averages is appropriate as an approximation via representative evidence of actual time worked in a case brought under the FLSA.  *Anderson v. Mt. Clemens Pottery,* 328 U.S. 680 (1946).

To calculate damages, Plaintiffs were prepared to present evidence supporting these averages and then calculate total unpaid back wages on the basis of payroll records, overtime sheets and witness testimony, which Plaintiffs would have presented to the jury.  In addition, pursuant to the FLSA, Plaintiffs would have sought an additional, equal amount as liquidated damages.  29 USC 216(b).

Defendant was prepared to contest these calculations.  Defendant was prepared to assert that no FLSA violation occurred because any potential denial of call-back pay, if proved, would have been based on a violation of the County's own policy and not on a violation of the FLSA.

5

Defendant was further prepared to contend that the damages calculation included a three-year pre-filing period, which was only available if Plaintiffs proved that there was a willful failure to pay wages owed, which Defendants denied. 29 USC §255. Defendant intended to seek an award of no damages, or in the alternative, far less in damages than Plaintiffs sought. Defendant also intended to prove, as an affirmative defense, that its failure to pay wages, if such occurred, was the result of a good faith mistake, thus permitting the Court to exercise its discretion to decline the award of liquidated damages pursuant to 29 U.S.C. §260.

Based upon discovery, Plaintiffs' successful motion for certification under section 216(b) and multiple settlement conferences, the issues were well joined. Plaintiffs allege damages were somewhere between zero and $92,287, including calculations of on-call pay and call-back pay. This was the posture as the parties entered the settlement conference.

The proposed settlement calls for a total payment from the County of $40,000 (including attorneys' fees and costs). The proposed distribution is to each of the named Plaintiffs equally and to the potential plaintiffs equally. In addition, counsel would recover their expenses, and a contingent fee pursuant to (but actually less than) the fee agreement entered into with the named plaintiffs.

The total settlement is fair in that it represents nearly 100% of the back pay damages for call-back pay (but not for on-call pay) that the Plaintiffs might conceivably have collected at trial. Far less than this amount might have been awarded by the jury, including at least the possibility of a defense verdict. The $27,100 going to all Plaintiffs represents virtually all compensation for the combined amount of callback hours worked between May 2014 and May 2017. Retrieving nearly all of the amount of money owed to them, while precluding liquidated damages, compensates the Transport employees fairly.

On the facts of this case, the settlement is fair to the Plaintiffs.  The settlement is also fair to the Defendant in that while it might have paid less in damages following a trial, it bore the distinct risk of having to pay more to Plaintiffs, as well as both its own and Plaintiffs' attorney fees, which would have been quite substantial following a trial.  The distribution to the Plaintiffs is equitable in light of the anticipated method of proving damages based upon representative testimony.

The attorney's fee in the case is also fair.  Suit was initiated on the basis of a contingent fee contract requiring payment of 33% of the total recovery.  A one-third contingent fee (plus expenses) is commercially reasonable in the Albuquerque market, and may even be below the norm for complex cases.  The net fee for counsel comes to approximately 26% of the recovery, less than the one-third bargained for.  The fee provision of the proposed settlement is thus fair and equitable to the Plaintiffs.  As explained in Mr. Youtz' affidavit (attached hereto as Exhibit D), the work performed on this case by Plaintiffs' counsel was proportionate.  The litigation necessarily involved two attorneys on the plaintiffs' side:  Shane Youtz and James Montalbano.  Youtz has at least 25 years' experience as a trial lawyer and substantial previous FLSA trial experience, and Montalbano, a junior associate, performed most of the work on the case at the district level, including depositions.  *See* Montalbano affidavit, attached hereto as Exhibit E.  The litigation also involved the use of one experienced paralegal from Mr. Youtz's office.

As outlined above, discovery in this matter necessarily involved some time and energy, given the number of plaintiffs and the preparation of the factual predicate supporting the legal theories.  Preparing a comprehensive and accurate settlement model also required much time and preparation.  Another time-consuming aspect of this litigation involved maintaining good client contact.  Three Plaintiffs sat for depositions.

Given the volume of legal work performed in this matter, the favorable terms of settlement, and counsel's willingness to forgo potentially available fees, the attorneys' fee recovery is fair and equitable under the circumstances. Counsel's effective average hourly rate in this matter of approximately $150, is well below the amount typically awarded counsel in these actions, both in this Court and in other federal courts around the United States.

In addition, Plaintiffs' attorneys have incurred $1,500 in actual expenses associated with the case. (Youtz, para. 25). These expenses are also, pursuant to the fee agreement, to be collected from the recovery. The expenses were necessarily incurred for filing fees, depositions, travel to meet with Plaintiffs in Sandoval County, and for discovery documents. (Youtz, para. 25).

## IV.  Conclusion

For the reasons outlined above, Plaintiffs respectfully request that this Court enter the proposed Stipulated Judgment, attached hereto as Exhibit A, and submitted concurrently herewith to Chambers via electronic submission.

Dated: September 21, 2018

Respectfully submitted,

**YOUTZ & VALDEZ, P.C.**

*/s/ James Montalbano*
Shane Youtz
shane@youtzvaldez.com
James A. Montalbano
james@youtzvaldez.com
900 Gold Avenue SW
Albuquerque, NM  87102
(505) 244-1200 – Telephone

*Counsel for Plaintiffs*

Approved by:

**BOARD OF COUNTY COMMISSIONERS
OF SANDOVAL COUNTY**


*Approved via email on 9/21/18*
Agnes Fuentevilla Padilla
afpadilla@btblaw.com
Butt Thornton & Baehr PC
PO Box 3170
Albuquerque, NM  87190-3170
*Counsel for Defendant*


I hereby certify that a true and correct
copy of the foregoing pleading was
electronically filed and served via
electronic notification through the CM/ECF
system this 21st day of September, 2018, on all
registered parties.


    */s/ James A. Montalbano*
James A. Montalbano